| | |
|---|---|
| 1 | **HEFNER, STARK & MAROIS, LLP** |
| 2 | Howard S. Nevins (CA Bar Assn. No. 119366)<br>Aaron A. Avery (CA Bar Assn. No. 245448) |
| 3 | 2150 River Plaza Drive, Suite 450<br>Sacramento, CA 95833-3883 |
| 4 | Telephone: (916) 925-6620<br>Fax No: (916) 925-1127 |
| 5 | Email: hnevins@hsmlaw.com |
| 6 | Attorneys for<br>SHERI L. CARELLO |
| 7 | Chapter 7 Trustee |

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### (Sacramento Division)

| | |
|---|---|
| In re | Case No.: 12-24831-A-7 |
| RANDEEP K. DEOL, | DC No.: HSM-008 |
| Debtor. | Date: June 3, 2013<br>Time: 10:00 a.m.<br>Place: 501 I Street<br>Sacramento, CA<br>Ctrm. 28, 7th Flr.<br>Judge: Michael S. McManus |

**MOTION FOR APPROVAL OF SALE OF ESTATE'S INTERESTS IN AND TO A SUBWAY FRANCHISE AND RELATED BUSINESS ASSETS**

SHERI L. CARELLO, the duly appointed Chapter 7 Trustee ("Trustee") in the pending bankruptcy case of RANDEEP K. DEOL (the "Debtor"), Case No. 12-24831-A-7, submits this Motion for Approval of Sale of Estate's Interests in and to a Subway Franchise and Related Business Assets ("Motion"), and in support thereof, respectfully represents as follows:

  1. This case was filed as a voluntary Chapter 7 case on March 13, 2012. The Trustee was appointed as the Chapter 7 Trustee on March 13, 2012, and has at all relevant times served in that capacity.

  2. Jurisdiction for the filing of this Motion exists pursuant to 28 U.S.C. sections 157 and 1334, 11 U.S.C. section 363(b), and the reference to this bankruptcy court by the United States District Court for the Eastern District of California.

3. The proposed sale that is the subject of this Motion relates to the estate's ownership interest in a Subway franchise tied to a Subway store located at 2104 P Street, Sacramento, California, and identified as Subway franchise #23343 (the "Subway Franchise"), together with related assets.

4. Shawn Hazeghazam, the proposed buyer herein ("Buyer"), both works for Subway's parent corporation and owns a number of Subway franchises/stores. Accordingly, Buyer is very familiar with Subway operations in general and also with the Subway Franchise that is the subject of this sale. Buyer desires to acquire, and the Trustee is willing to sell, all of the Estate's right, title and interest in and to the Subway Franchise and all existing equipment, small wares and furniture located at and used in connection with the operation of the Subway Franchise (collectively, the "Sale Assets").

5. The Trustee and the Buyer have entered into a written Agreement for Sale of Subway Franchise and Related Business Assets ("Purchase Agreement"), a true and correct copy of which is attached as Exhibit "A" to the Exhibits Cover Sheet filed and served herewith.

### Summary of Purchase Agreement

6. The Motion, if approved by the Court, shall establish the terms and conditions of the proposed purchase and sale of the Sale Assets between the Trustee, as seller, and Buyer, as buyer of the Sale Assets. The proposed terms of the purchase and sale are as follows:

    a. The sale of the Sale Assets is subject to court approval and potential overbidding;

    b. The purchase price (the "Purchase Price") will be Sixty-Five Thousand Dollars ($65,000.00), plus the additional amount, if any, required from Buyer as the successful bidder at the hearing on this Motion;

    c. Buyer has delivered a down payment of $6,500.00 to the Trustee (the "Down Payment"), which shall be held by the Trustee pending court approval of the Motion. If Buyer is the successful high bidder at the hearing on this Motion, the balance of the Purchase Price shall be paid within five (5) calendar days after entry of the court order

1 approving the sale of the Sale Assets to Buyer;

2       d.    The Sale Assets are being sold "AS IS," "WHERE IS", "WITH ALL FAULTS" without any express or implied warranty or representation by the Trustee or the Estate with respect to ownership or condition of the Sale Assets, including without limitation, any warranty or representation as to the extent of the Estate's ownership interests in the Sale Assets, the condition of the Sale Assets, the compliance of the Subway Franchise operation with applicable laws or Subway franchisee rules, or the transferability of the Sale Assets;

      e.    The Sale Assets shall be subject to any and all liens and encumbrances thereon, known or unknown. Buyer shall release and waive the Trustee and the Estate from any liability or claim related to the Sale Assets and shall rely solely on his own knowledge and investigation of the Sale Assets in his election to purchase the Sale Assets under this Agreement;

      f.    Buyer shall be solely responsible for any and all sales, transfer, use or other taxes, and all license, registration, or other fees charged by any public authority or Subway in connection with the transfer of the Sale Assets from the Trustee to Buyer; and

      g.    If Buyer is outbid at the hearing on this Motion to approve the sale, Trustee shall refund Buyer's $6,500.00 Deposit upon the closing of the sale with the successful overbidder. If the successful overbidder fails to timely close the sale, Buyer shall remain obligated to purchase the Sale Assets for the Purchase Price, or any higher bid for the Sale Assets made by Buyer at the hearing on this Motion.

## Sale Subject to Overbidding

7. The sale of the Sale Assets at the proposed Purchase Price is subject to overbidding at the hearing to approve this Motion. Buyer shall have the right, but not the obligation, to participate in any such overbidding, which may result in an increase in the amount of the Purchase Price.

8. The Trustee proposes the following terms for overbidding on the Sale Assets:

      a.    Any person or entity wishing to bid on the Sale Assets shall be required to first become a qualified overbidder ("Qualified Overbidder");

\\hsmsrv2\clients\Carello, Sheri L\Deol, Randeep (7984-0001)\Pldg Trustee Sale Asset (hsm-8)\pldg approve sale of asset mtn.wpd

b. Any person or entity wishing to become a Qualified Overbidder must, no later than two (2) business days prior to the hearing on this Motion, deliver to the Trustee a non-refundable deposit in the amount of $6,500.00 (the "Overbidder Deposit"), in the form of a cashier's check or money order made payable to "SHERI L. CARELLO, Chapter 7 Trustee of Randeep K. Deol Bankruptcy Estate," which will be applied to the purchase price for the Sale Assets if the overbidder is the successful purchaser following the hearing on the Motion;

c. The Trustee proposes that the initial overbid by a Qualified Bidder be not less than $66,000.00, with successive overbids in increments of $1,000.00 or greater;

d. If the successful overbidder fails to consummate the sale or otherwise breaches its obligations and/or covenants to the Trustee and the estate, the Overbidder Deposit shall be retained and administered as an asset of the estate. In the event that a Qualified Overbidder is not the successful overbidder on the Sale Assets, or if this Motion is not approved by the Court, the Overbidder Deposit shall be refundable and shall be returned by the Trustee to the Qualified Overbidder;

e. If Buyer is the high bidder, it shall pay the greater of its high bid or the Purchase Price for the Sale Assets;

f. If a Qualified Overbidder outbids Buyer, the Qualified Overbidder must purchase the Sale Assets on identical terms to those set forth in this Motion, subject to any modifications ordered by the Court. In particular, the high bidder will take the Sale Assets on an "AS IS" "WHERE IS" basis, subject to any and all claims, liens or encumbrances, disclosed or undisclosed; and

g. If full payment from the high bidder is not received within five (5) calendar days after entry of the Court's order approving this Motion, Buyer shall remain obligated to purchase the Sale Assets for the greater of the Purchase Price or Buyer's highest bid made for the Sale Assets at the overbidding hearing.

### Fair Value Determination

9. In determining that the proposed Purchase Price represents a fair value to the estate for the Sale Assets and the proposed sale is in the best interests of the estate's

creditors, the Trustee considered the following factors:

    a. The Trustee's efforts to market the Sale Assets for sale included the following: (I) the Trustee determined a range of values of the Sale Assets by speaking with individuals at Subway's corporate office; (ii) based on these values, the Trustee searched the internet and found several sites relating to the sale of Subway franchises; (iii) The Trustee had Subway's corporate office refer parties to her who were interested in purchasing a Subway Franchise; and (iv) the Trustee also contacted a broker who sells Subway Franchises and told him that she had a Subway Franchise for sale. Buyer, who works for Subway's parent corporation and is familiar with and operates other Subway franchises, is one of the persons contacted by the Trustee through these efforts. Additional marketing of the Sale Assets would not be expected to generate any additional interest therein.

    b. The Trustee also approached the Debtor about any potential interest in either the Debtor or the Debtor's son, who is currently managing the Subway Franchise, in acquiring the Subway Franchise. The offer received by the Trustee from the Debtor's son for the Subway Franchise was significantly below the Purchase Price offered by Buyer, further supporting the value to the estate and the estate's creditors of the Buyer's offer.

10. In light of the foregoing and Buyer's willingness to accept the Sale Assets "AS IS" and subject to any and all liens and encumbrances, disclosed and undisclosed, and subject to any non-compliance issues with applicable laws or Subway franchise rules, the Trustee has concluded that the $65,000.00 Purchase Price for the Sale Assets, and the other terms of the sale, are fair and reasonable and in the best interests of the Estate and its creditors. Moreover, the public nature of this sale process and the opportunity for overbidding by other interested parties are intended to guard against a sale of the Sale Assets at a price less than reasonable under all relevant circumstances.

11. The benefits that will flow from this court's approval of the Motion are several. The proposed sale of the Sale Assets will: 1) bring meaningful funds into the estate; 2) allow the Trustee to more promptly conclude administration of this case; 3) eliminate future administrative expenses in general in this case and those specifically associated with the

5

marketing of the Sale Assets; and 4) further allow this case to be closed in an administratively solvent manner with a distribution being made to holders of allowed unsecured claims herein.

12. In the exercise of her business judgment and based on the advice of her Counsel, the Trustee has concluded that the proposed sale of the Sale Assets for the Purchase Price of $65,000.00 and on the terms set forth in the Purchase Agreement is fair and equitable, is in the best interests of the estate, and should be approved by the court.

**WHEREFORE,** the Trustee requests that the court approve the proposed sale of the Sale Assets set forth in the Agreement and authorize the Trustee to act in accordance with the terms of the Agreement.

Dated: May 3, 2013

HEFNER, STARK & MAROIS, LLP

By  *Howard S. Nevins*
Howard S. Nevins, Attorneys
for SHERI L. CARELLO,
Chapter 7 Trustee